[Cite as *Scott v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-4383.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Aaron Scott, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 12AP-755 |
| v. | : | (Ct. of Cl. No. 2011-11157) |
| Ohio Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| Joseph N. Williams, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 12AP-756 |
| v. | : | (Ct. of Cl. No. 2012-01554) |
| Ohio Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| Thomas Stallings, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 12AP-757 |
| v. | : | (Ct. of Cl. No. 2011-12137) |
| Ohio Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| Anthony Moody, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 12AP-758 |
| v. | : | (Ct. of Cl. No. 2011-11173) |
| Ohio Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |

Larry Solomon,                                    :

     Plaintiff-Appellant,                :
                                                                                No. 12AP-760
v.                                                :                        (Ct. of Cl. No. 2011-11165)

Ohio Department of Rehabilitation                 :        (REGULAR CALENDAR)
and Correction,
                                                  :
     Defendant-Appellee.                  :

Lavance Turnage,                                  :

     Plaintiff-Appellant,                :
                                                  :             No. 12AP-761
v.                                                :        (Ct. of Cl. No. 2011-13061)

Ohio Department of Rehabilitation                 :        (REGULAR CALENDAR)
and Correction,                                   :

     Defendant-Appellee.                  :

Frank E. Tyson,                                   :

     Plaintiff-Appellant,                :
                                                                                No. 12AP-762
v.                                                :        (Ct. of Cl. No. 2011-13249)

Ohio Department of Rehabilitation                 :        (REGULAR CALENDAR)
and Correction,
                                                  :
     Defendant-Appellee.                  :

Jameel R. Haamid,                                 :

     Plaintiff-Appellant,                :
                                                                                No. 12AP-763
v.                                                :        (Ct. of Cl. No. 2011-11432)

                                                  :
Ohio Department of Rehabilitation                 :        (REGULAR CALENDAR)
and Correction,                                   :

     Defendant-Appellee.                  :

Michael Evans,                             :

    Plaintiff-Appellant,            :
                              No. 12AP-764
v.                                         :        (Ct. of Cl. No. 2012-02089)

Ohio Department of Rehabilitation          :              (REGULAR CALENDAR)
and Correction,
                               :
    Defendant-Appellee.            :

John W. Forester,                          :

    Plaintiff-Appellant,            :

                               :           No. 12AP-765
v.                                         :        (Ct. of Cl. No. 2011-12056)

Ohio Department of Rehabilitation          :              (REGULAR CALENDAR)
and Correction,                            :

    Defendant-Appellee.            :

---

D E C I S I O N

Rendered on October 3, 2013

---

*Swope and Swope*, and *Richard F. Swope*, for appellants.

*Michael DeWine*, Attorney General, and *Kristin S. Boggs*, for appellee.

---

APPEALS from the Court of Claims of Ohio

VUKOVICH, J.

{¶ 1}   These ten consolidated appeals are brought from judgments of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC").

{¶ 2}   The ten individual plaintiffs-appellants are all inmates at the Mansfield Correctional Institution ("MCI") who allege that their confidential medical records were negligently released to the general prison population.  Their separately-filed complaints state claims for invasion of privacy through wrongful dissemination of medical information.  They also generally claim a violation of the right to privacy under other, unspecified, state and federal law.

{¶ 3}   The Court of Claims granted summary judgment for ODRC on the basis that the nonspecific invasion-of-privacy claims were constitutional in nature and could not be considered by the Court of Claims.  With respect to the claims for wrongful dissemination of medical information, the court addressed this as a common-law claim for the tort of unauthorized disclosure of privileged medical information. The court found that the circumstances under which plaintiffs' medical information was disclosed did not meet the elements set forth in *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395 (1999), for this tort. As an alternative ground for ruling in favor of ODRC, the court held that ODRC was entitled to the defense of discretionary immunity for the actions and inaction of MCI staff that resulted in the disclosure of medical information.

{¶ 4}   Plaintiffs bring the following six assignments of error on appeal:

ASSIGNMENT OF ERROR NO. 1:

THE TRIAL COURT ERRED WHEN IT DECIDED DISPUTED ISSUES OF FACTS, GRANTED SUMMARY JUDGMENT AND FAILED TO GIVE PLAINTIFFS-APPELLANTS' EVIDENCE ITS MOST FAVORABLE INTERPRETATION, SUPPORTING OPPOSITION TO DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

ASSIGNMENT OF ERROR NO. 2:

THE TRIAL COURT ERRED IN RULING DOCUMENTS SEVERAL INMATES RELY ON AS BEING PART OF DOCUMENTS DISSEMINATED TO THE PRISON POPULATION WERE NOT ATTACHED TO THE PLEADINGS OR MADE EXHIBITS, SINCE THIS WAS NOT AT ISSUE, BRIEFED OR DISCUSSED, EXCEPT BY THE COURT, AND IN FACT WERE IN THE RECORD.

ASSIGNMENT OF ERROR NO. 3:

> THE TRIAL COURT ERRED IN RULING THE TRASH DISPOSAL UTILIZED IN DISPOSING OF OUTDATED MEDICAL RECORDS WAS AUTHORIZED BASED ON DISCRETION WHEN PLAINTIFFS-APPELLANTS' EVIDENCE ESTABLISHED THERE WAS NO POLICY AND ACCESS WAS OPEN TO ALL EMPLOYEES AND INMATES UPON TRASH LEAVING THE PHARMACY, SUCH RECORDS BEING LEGALLY PRIVILEGED AND CONFIDENTIAL.
>
> ASSIGNMENT OF ERROR NO. 4:
>
> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT, RULING DEFENDANT-APPELLEE'S ACTIONS DID NOT CONSTITUTE AN UNAUTHORIZED DISCLOSURE OF PLAINTIFFS-APPELLANTS' MEDICAL RECORDS.
>
> ASSIGNMENT OF ERROR NO. 5:
>
> THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND OVERRULING PLAINTIFFS-APPELLANTS' MOTION FOR SUMMARY JUDGMENT.
>
> ASSIGNMENT OF ERROR NO. 6:
>
> THE TRIAL COURT ERRED IN RULING THE AFFIDAVIT OF PLAINTIFF-APPELLANT JAMEEL HAAMID WAS TOTAL HEARSAY AND WAS DISREGARDED IN RULING ON THE MOTIONS FOR SUMMARY JUDGMENT OF PLAINTIFFS-APPELLANTS AND DEFENDANT-APPELLEE.

{¶ 5} Plaintiffs' assignments of error one, three, four and five all address interwoven issues regarding the general propriety of a grant of summary judgment in this case and will be addressed together after disposal of the remaining two assignments of error. These raise specific issues regarding evidentiary rulings by the trial court.

{¶ 6} Plaintiffs' second assignment of error asserts that the trial court erred in finding that four of the plaintiffs cannot state meritorious claims because their names, in fact, do not appear on the misappropriated documents that underlie this case. The Court of Claims concluded that the document containing the names of these four plaintiffs was

not admitted under the case numbers for their individual complaints.    The court concluded that, as a result of this omission, there was no evidence in the record that private medical information about these plaintiffs was released. On this basis, the court granted summary judgment in favor of ODRC on the complaints underlying our appeal Nos. 12AP-761, 12AP-762, 12AP-764 and 12AP-765.

{¶ 7}  We find error because the record of proceedings supports plaintiffs' contention on appeal that these four plaintiffs' names do appear on a relevant document filed in the case.

{¶ 8}  Six of the ten plaintiffs in these cases are HIV-positive inmates receiving a course of ongoing healthcare for that condition and appearing on a list maintained and periodically updated by the institution's medical staff.  The other four plaintiffs appear on a separate "chronic care list" for other ailments requiring ongoing care, but are not HIV-positive.  These documents constitute two of the documents that made their way into the hands of inmates and then were posted or circulated among the general inmate population to the detriment of those appearing on the list.  The trial court apparently considered that the chronic care list containing the names of the non-HIV-positive plaintiffs was not before it for purposes of deciding summary judgment because it was not attached to those four plaintiffs' complaints.  Plaintiffs respond that, by agreement of counsel in consolidating these ten cases, the matters went forward on a single record which does in fact contain the purportedly omitted list as an exhibit to a deposition.

{¶ 9}  On appeal, ODRC's response to this assignment of error is, in fact, not responsive.  More specifically, counsel for ODRC does not dispute the general assertion that an agreement to go forward on a single record was made early in proceedings for these ten cases, or that the second chronic care list was, in fact, filed with the deposition for one of the ten cases, albeit not in one of the four cases brought by the non-HIV-positive inmates. The refusal to consider the chronic care list containing these four plaintiffs appears to constitute a mere oversight by the Court of Claims, and on appeal we will, when conducting our de novo review of the grant of summary judgment, consider this document as properly found in the record for the pertinent cases.  Plaintiffs' second assignment of error accordingly has merit and is sustained.

{¶ 10} Plaintiffs' sixth assignment of error asserts that the trial court erred in finding that the affidavit of plaintiff Jameel Haamid was hearsay in its entirety and would not be considered for summary judgment purposes. The brief of counsel for ODRC contains no response to this assignment of error. Independently examining the affidavit in question, we find that the bulk of the affidavit concerns hearsay assertions regarding matters for which the affiant had no personal knowledge. These matters include a description of the manner in which the confidential medical information was mishandled by prison personnel, obtained by inmates, and distributed. One aspect of the affidavit, however, is admissible. The averment that the affiant inmate's medical records were circulated throughout the compound and clearly identified him is based upon his personal knowledge, as is his averment that this was done without his consent. Plaintiffs' sixth assignment of error is accordingly overruled in part and sustained in part, and we will consider the non-hearsay aspect of inmate Haamid's affidavit.

{¶ 11} Plaintiffs' four remaining assignments of error all assert that the trial court erred in granting summary judgment on either of the alternative bases cited: (1) discretionary immunity, or (2) a lack of evidence supporting each of the elements of the tort of unauthorized disclosure of medical information. Summary judgment under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support each element of the stated claims. *Id.*

{¶ 12} An appellate court's review of summary judgment is de novo. *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994); *Bard v. Soc. Natl. Bank*, 10th Dist. No. 97APE11-1497 (Sept. 10, 1998). Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Jones v. Shelly Co.*, 106 Ohio App.3d

440, 445 (5th Dist.1995).   As such, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds.  *Bard*.

{¶ 13} Most of the facts in this case are not in dispute.  Sharon K. Welch testified in her deposition that she was a pharmacy technician at MCI filling prescriptions for inmates in June 2011.  As part of the healthcare center routine, medical staff would generate HIV-positive and chronic care lists covering inmates receiving ongoing regular treatment for HIV or other chronic conditions.  Outdated lists, Welch testified, were customarily placed in the pharmacy trash without being shredded.  At this time, there was no explicit institutional policy concerning disposal of inmate medical records, such as a requirement to burn or shred such documents.  Despite this, Welch stated that she understood that such documents were confidential and should not be shared with unauthorized individuals.

{¶ 14} Welch testified that pharmacy trash would be bagged and placed outside the back door of the pharmacy in a secure hallway.  An inmate worker would then collect this trash and take it to the dumpster located in another controlled-access area.  Welch was aware that the documents underlying the present cases had been circulated among the inmates, but was unaware of any other incidents regarding inmate medical records in her prior 16 years of employment at MCI.

{¶ 15} Welch also stated that once trash left the pharmacy, it was accessible by any inmate.  On this last point, ODRC later filed a clarifying or supplemental affidavit by Welch contradicting this statement in her deposition and averring that Welch had no personal knowledge of trash disposal procedures at the institution beyond her personal experience in collecting pharmacy trash and placing it outside the pharmacy door. Normally, a party moving for or opposing summary judgment may not create or eliminate a genuine issue of material fact by introducing new materials that contradict prior deposition testimony.  *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455. As such, we would typically consider the contradictory materials in the light most favorable to the nonsubmitting party and apply the version of Welch's testimony that least favors ODRC when deciding the propriety of summary judgment. However, we find in this case that the purported clarification is without impact on our decision because it is already apparent

from the balance of her testimony that Welch had no personal knowledge of the fate of pharmacy trash once it left her control. Any deposition comments on her part regarding that process would have been disregarded as hearsay even without the benefit of the subsequent affidavit.

{¶ 16} ODRC also submitted in support of summary judgment the affidavit of Alice Cain, employed at the time in question as a healthcare administrator at MCI. Cain's affidavit avers that pharmacy trash would be disposed of with trash generated elsewhere in the healthcare center. This was initially kept in a back hallway to which inmates did not have general access. Prison staff would unlock the door accessing this hallway and another door leading to an outside dumpster, pursuant to which either prison staff or a supervised inmate on janitorial duty (a "porter") would place the bagged trash in a locked dumpster.

{¶ 17} Corrections Officer E. Hermann executed an affidavit averring that, as part of his regular duties, he supervised porters taking trash carts to the trash compactor for disposal. This affidavit, however, only attests to procedures in place currently, and not those in place during June 2011. The trial court properly disregarded Hermann's affidavit.

{¶ 18} Testimony by two inmates gave conflicting accounts of how the HIV-positive and chronic care lists came into the possession of inmates for subsequent distribution in the general inmate population. Inmate Kenneth Kirks testified that he was an inmate at MCI from 2006 and incarcerated there in June 2011. At that time, Kirks was employed as an inmate kitchen worker. His duties included cleaning up an area by the loading dock and dumpsters. As he was sweeping up this area one day, he saw some papers under the dumpsters and blew them out with a leaf blower. These were the pharmacy documents, and he showed them to a fellow inmate, Phillip Kukla, who also worked in the kitchen. Kirks made copies of the documents in the kitchen and in some indeterminate or unspecified manner made those copies accessible to the general inmate population.

{¶ 19} Inmate Kukla gave a differing account of how Kirks obtained the lists. Kukla testified that, despite Kirks' assertions, Kukla had never possessed the treatment lists. Kukla's version was that he and Kirks were not cleaning the dumpster area when

Kirks found the lists, but were loading food into a freezer truck because the kitchen freezers were inoperative. In Kukla's experience, Kirks would take any opportunity he could to go through dumpster trash looking for contraband. On this occasion, after finding the healthcare lists, Kirks had stated he thought the documents would be a valuable source of information with which to blackmail or extort other inmates.

{¶ 20} Viewing the evidence, where conflicting, in the light most favorable to plaintiffs, the question is whether these facts support their claims for unauthorized release of medical information or invasion of privacy. We first consider plaintiffs' non-particularized claims for invasion of privacy under unspecified state or federal law.

{¶ 21} Plaintiffs do not argue any specific federal entitlement applicable to a state institution other than a general constitutional claim, over which the Court of Claims would not have jurisdiction. *Bleicher v. Univ. of Cincinnati College of Medicine*, 78 Ohio App.3d 302, 307 (10th Dist.1992). The Court of Claims properly concluded that it lacked jurisdiction over these claims. Having so concluded, however, the court then improperly went on to exercise de facto jurisdiction over the claims by granting summary judgment thereon.

{¶ 22} Because a grant of summary judgment is a disposition on the merits, it is inconsistent with a lack of jurisdiction in the court issuing such a judgment. *Kinney v. Ohio Dept. of Adm. Servs.*, 30 Ohio App.3d 123 (10th Dist.1986). This principle prevents a court lacking subject-matter jurisdiction from entering a judgment on the merits that would stand as res judicata. Once it decided that it lacked jurisdiction over this aspect of the inmates' complaints, the only course open to the Court of Claims was to dismiss these claims without prejudice. The trial court's judgments will be reversed on this point, and remanded for the Court of Claims to modify its judgments accordingly.

{¶ 23} We next turn to plaintiffs' claims for unauthorized release of medical information under *Biddle*. The first defense raised by ODRC is an assertion of discretionary immunity.

{¶ 24} Under the judicially-created doctrine of discretionary immunity, ODRC is generally immune from tort liability for decisions related to policies and procedures. *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-1052, 2010-Ohio-4736. The state cannot be sued for its legislative or judicial functions or the exercise of an executive

or planning function involving "the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Reynolds v. State, Div. of Parole & Community Servs.*, 14 Ohio St.3d 68, 70 (1984). The doctrine of discretionary immunity has been applied where appropriate to policies and procedures that preserve internal order and maintain institutional security in the penal system. *Hughes* at ¶ 17, citing *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979).

{¶ 25} This court has clearly rejected instances in which the claimed discretionary immunity applies to mere execution or implementation of policy decisions. *See, e.g., Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048, ¶ 14 (10th Dist.). The present case, however, does, in fact, fall under discretionary immunity because the institution's fundamental choice at an executive level to implement, or as the case may be *not* implement, a more comprehensive medical trash disposal policy constitutes a basic planning function and characterized by the exercise of a high degree of official judgment or discretion. It is uncontroverted in the present case that Welch was following established prison custom, even in the absence of an explicit written procedure, when she disposed of trash as she did. Similarly, institutional policy regarding inmate participation in disposal of trash, and as a result some supervised access to the dumpster area, represented a discretionary planning function. There is no assertion of specific negligence on Welch's part, or any other specific institutional staff member. Comprehensively stated, in this instance institutional policy was strictly followed, albeit with bad results. We therefore find that plaintiffs' claims are barred by the doctrine of discretionary immunity.

{¶ 26} Alternatively, we find that plaintiffs have failed to present evidence on each and every element of their tort claim. Ohio recognizes the independent tort of unauthorized disclosure of confidential medical information: "In Ohio, an independent tort exists for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." *Biddle* at paragraph one of the syllabus; *compare Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973; *OhioHealth Corp. v. Ryan*, 10th Dist. No. 10AP-937, 2012-Ohio-60. The issue in the present case is whether an imperfect method for disposal of MCI medical facility trash is enough to fulfill

the "unauthorized" element of this tort, or whether, to the contrary, the disclosure of confidential medical information must be intentional, as ODRC alleges.

{¶ 27} Ohio cases do not further develop what would constitute "unauthorized disclosure" pursuant to *Biddle*.  Plaintiffs rely on a federal case discussing privacy rights created pursuant to statute.  *Beaven v. U.S. Dept. of Justice*, 622 F.3d 540 (6th Cir.2010) (discussing and applying 5 U.S.C. 552a(g)(4) of the Federal Privacy Act).  The act in question prohibits disclosure of, inter alia, medical information, and provides heightened penalties when the disclosure is "intentional or willful."  5 U.S.C. 552a(b) and 552a(g)(4).  In *Beaven*, a staff member inadvertently left a file folder containing sensitive staff information on a civilian employee's desk.  The information then fell into the hands of inmates.  The issue was whether an inadvertent disclosure could be "intentional or willful" within the meaning of the statute.  The court found that it could.

{¶ 28} While we do not disagree with the proposition that *Beaven* can provide useful guidance by analogy, the statutorily-defined right to privacy examined therein does not extend rights that are co-extensive with those granted by the common-law tort definition in Ohio.

{¶ 29} *Biddle* itself is certainly premised on facts that involved a deliberate and intentional disclosure, but in creating this new tort under Ohio law, the Supreme Court relied on some authorities involving negligence fact patterns.  *Id.* at 397; *see, e.g., Prince v. St. Francis-St. George Hosp., Inc.*, 20 Ohio App.3d 4, 6-7 (1985) ("We believe that in given factual situations there could well be mixed negligence and intention. We do not elaborate on this point, nor is it necessary for us to do so. * * * It seems to us that a negligent invasion of the right of privacy, which is a distinct possibility in the factual scenario *sub judice*, can just as effectively invade one's right of privacy as an intention to do so.").  We are therefore unwilling to accept ODRC's proposal that "unauthorized" disclosure under *Biddle* equates to "intentional" disclosure.  Ultimately, however, considering the matter as one of first impression, we find that under the circumstances outlined in the facts given above, supervised inmate access to trash containing unshredded medical documents does not constitute "disclosure" for purposes of the tort of unauthorized disclosure of medical information as defined by *Biddle*.

{¶ 30} In so holding, we acknowledge counsel for plaintiffs' expressed concern that the prison environment presents special problems with respect to safeguarding medical information.  Given the known propensity of some inmates to ingeniously and maliciously exploit any opportunity for leverage over staff or fellow inmates, this is undeniable. We do not accept, however, counsel's outcome-based proposition that *any* institutional failure to fully anticipate and forestall this sort of inmate conduct represents actionable conduct under *Biddle*. Without precluding that an inadvertent disclosure might, under different facts, fulfill the elements of *Biddle*, the present case does not.

{¶ 31} Plaintiffs' first, third, fourth, and fifth assignments of error are accordingly sustained in part and overruled in part.

{¶ 32} In summary, plaintiffs' second assignment of error is sustained.  Plaintiffs' first, third, fourth, fifth, and sixth assignments of error are sustained in part and overruled in part.  The judgments of the Court of Claims of Ohio granting summary judgment in favor of ODRC on plaintiffs' claims for unauthorized disclosure of medical information are affirmed.  The court of claims' grant of summary judgment on plaintiffs' remaining claims is reversed, and the matter remanded to modify its judgments to reflect a dismissal of these claims for lack of jurisdiction.

*Judgments affirmed in part,*
*reversed in part, and cause remanded.*

KLATT, P.J., and SADLER, J., concur.

VUKOVICH, J., of the Seventh Appellate District, sitting by assignment in the Tenth Appellate District.

_____