| KATIE VICKERS, etc. | Case No. 2017-00654JD |
|---|---|
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Robert Van Schoyck |
| v. | |
| | <u>DECISION</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

**{¶1}** On March 23, 2018, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). Plaintiff filed a memorandum in opposition on April 17, 2018. On April 19, 2018, defendant filed a motion to strike plaintiff's memorandum as untimely under L.C.C.R. 4(C). The motion for summary judgment is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

**{¶2}** Civ.R. 56(C) states, in part, as follows:

**{¶3}** "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶4} Plaintiff, individually and as the representative of the estate of James Oglesby, brings this action for wrongful death and survivorship.  As set forth in the complaint, Oglesby was at all times relevant an inmate in the custody and control of defendant at the Toledo Correctional Institution (ToCI).  Plaintiff alleges that on August 18, 2013, Oglesby and other inmates were in an outdoor area of the ToCI compound during a recreation period when fellow inmates Shawn Daviduk and Ronald Shaffer, who were "wielding baseball bats," attacked Oglesby.  Corrections Officer John Searle was allegedly monitoring the outdoor recreation area at the time and learned of the attack, but proceeded indoors "away from the attack" to summon assistance from other officers, including Corrections Officer Christina Hernandez, who had been monitoring the indoor recreation area.  According to the complaint, Hernandez responded to Searle's call for assistance but "[n]o direct aid was rendered to Oglesby until the attack ceased."  It is undisputed that Oglesby was transported to a local hospital where he died three days later, on August 21, 2013.

{¶5} Plaintiff claims that Oglesby's injuries and death "were a direct result of the failure of Defendants providing dangerous weapons without supervision to inmates who assaulted the decedent."  More specifically, plaintiff claims that defendant was negligent or grossly negligent in providing bats to inmates, failing to "adequately screen the inmates" who had access to the bats, and failing to properly supervise inmates using the bats, and plaintiff also claims that defendant was negligent in its hiring, training, and supervision of Corrections Officers Searle and Hernandez.

{¶6} "To establish negligence, a plaintiff must show the existence of a duty, a breach of that duty, and injury resulting proximately therefrom."  *Taylor v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-1156, 2012-Ohio-4792, ¶ 15.  "In the context of a custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks."  *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶

8. "This rule, however, does not make the state an insurer of inmates safety." *Doss v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 99AP-661, 2000 Ohio App. LEXIS 1254 (Mar. 28, 2000), citing *Williams v. S. Ohio Corr. Facility*, 67 Ohio App.3d 517, 526 (10th Dist.1990). "'Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances.'" *Literal v. Dept. of Rehab. & Corr.*, 2016-Ohio-8536, 79 N.E.3d 1267, ¶ 15, quoting *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 04AP-177, 2004-Ohio-5545, ¶ 16.

{¶7} In its motion for summary judgment, defendant argues, in part, that under the doctrine of discretionary immunity, it is immune from liability for the claims that pertain to "its decisions relating to screening its inmates, providing recreation items to inmates, and inmate supervision."

{¶8} "The state of Ohio has consented to 'have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties.'" *Wassenaar v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 10AP-395, 2010-Ohio-6125, ¶ 15, quoting R.C. 2743.02(A)(1). "'The language in R.C. 2743.02 that "the state" shall "have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *" means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of [that activity or function].'" *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 773 N.E.2d 1018, 2002-Ohio-4210, ¶ 35, quoting *Reynolds v. State, Div. of Parole & Community Servs.*, 14 Ohio St.3d 68, 471 N.E.2d 776 (1984), paragraph one of the syllabus. This doctrine is "commonly referred to as

sovereign or discretionary immunity * * *." *Bradley v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 07AP-506, 2007-Ohio-7150, ¶ 17.

{¶9} "'Prison officials are the acknowledged experts in the placement and management of their prisoners.'" *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-606, 2012-Ohio-1017, ¶ 28, quoting *Kordelewski v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 00AP-1109, 2001 Ohio App. LEXIS 2730 (June 21, 2001). "[C]ourts have provided prison administrators 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Humphrey v. Lane*, 89 Ohio St.3d 62, 69, 728 N.E.2d 1039 (2000), quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *see also Brown v. Plata*, 563 U.S. 493, 511 (2011) ("Courts must be sensitive to the State's interest in punishment, deterrence, and rehabilitation, as well as the need for deference to experienced and expert prison administrators faced with the difficult and dangerous task of housing large numbers of convicted criminals."). "[E]ach institution encounters health, safety, and security concerns unique to its specific population. Accordingly, case law has consistently recognized that prison officials should be granted deference in implementing rules addressing those unique situations." *Briscoe v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 02AP-1109, 2003-Ohio-3533, ¶ 16.

{¶10} Under the discretionary immunity doctrine, "ODRC is generally immune from tort liability for decisions related to policies and procedures." *Scott v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-4383, 999 N.E.2d 231, ¶ 24 (10th Dist.). The Tenth District Court of Appeals has held that "'decisions relating to the allocation and location of correctional staff concern prison security and administration and, as such, are executive functions that involve a high degree of official discretion.'" *McDougald v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 17AP-776, 2018-Ohio-2315, ¶ 15, quoting *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-1052, 2010-Ohio-

4736, ¶ 18. Similarly, decisions relating to an inmate's classification or security status concern prison security and administration and are executive functions that involve a high degree of official discretion. *Deavors v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 98AP-1105, 1999 Ohio App. LEXIS 2338 (May 20, 1999). It has also been held that discretionary immunity applied in a case where defendant's employees followed institutional policy on medical trash disposal, including inmate participation in the disposal of trash, and there was no allegation of specific negligence on the part of any prison employee. *Scott* at ¶ 25. "In other words, when adopting a policy or procedure to 'preserve internal order and maintain institutional security' or by acting in accordance with such a policy or procedure, ODRC (as a division of the sovereign) enjoys immunity." *Frash v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-360, 59 N.E.3d 566, ¶ 23 (10th Dist.).

{¶11} In support of its motion, defendant submitted an affidavit from Gary Parker, who avers that he served as the Major at ToCI from 2010 to 2014. In that role, Parker states, he was responsible for the overall security operations at ToCI and was familiar with institutional security policies. As Parker explains, ToCI policy permitted Level 3 inmates to participate at specified times in indoor and outdoor recreational activity, including softball, and Oglesby, Daviduk, and Shaffer were all Level 3 inmates who were permitted to participate in softball and other recreational activities on August 18, 2013. Parker states that his job responsibilities included determining the appropriate level of correctional officer staffing, which included having one officer monitor indoor recreational activity and having one officer monitor outdoor recreational activity. Parker further states that it was acceptable under prison policy for one corrections officer to monitor over 100 inmates during recreation. Parker also states that inmates going to the recreation area were screened with a metal detector. By Parker's testimony, he was not aware of an inmate ever using a bat to assault anyone prior to this incident.

{¶12} Defendant also submitted an affidavit from Meredith Rinna, who avers that during the relevant time period she served as the Unit Manager Chief at ToCI, in which capacity she was responsible for the overall rehabilitative efforts for the inmates. Rinna states that she is familiar with defendant's policies regarding inmate classifications and that she reviewed the inmate files of Daviduk and Shaffer. According to Rinna, Daviduk and Shaffer were properly classified as Level 3 inmates at ToCI.

{¶13} Lastly, defendant submitted an affidavit from Corrections Officer John Searle, who states that he was one of two officers monitoring the recreational activity of inmates during the first shift on August 18, 2013. Searle states that it was the policy at ToCI that Level 3 inmates were permitted to participate in indoor and outdoor recreational activity at specified times. Searle relates that outdoor recreational activities available to inmates included softball, among other things, and to that end inmates were issued softballs, mitts, and two softball bats on August 18, 2013. According to Searle, he did not see Daviduk and Shaffer attack plaintiff, nor did he have any knowledge that they would do so. Rather, Searle explains that while monitoring the yard around 2:00 p.m. he observed an inmate, Oglesby, lying face down on the ground, which prompted him to walk toward Oglesby and call out to get his attention. Searle states that when Oglesby did not respond, he ran toward Oglesby and saw that he had been badly injured. As Searle avers, he immediately radioed for assistance and other officers and medical staff arrived quickly and attended to Oglesby. Searle avers that he later learned that Daviduk and Shaffer, whom he states were Level 3 inmates, had assaulted Oglesby with a softball bat. Searle recounts that he had been stationed in the recreational area for more than six months leading up to the incident and had no knowledge of inmates using a bat to assault anyone.

{¶14} In opposing defendant's motion, plaintiff submitted the deposition testimony of Corrections Officer Searle, taken in connection with a previous lawsuit that plaintiff filed in federal court. Searle testified therein that he has worked as a corrections officer

since 2000, that he attended defendant's training academy at that time, and that he receives 40 hours of generalized training annually. Describing the supervision of inmates in the recreation area, Searle stated that one corrections officer monitored the indoor area while another monitored the outdoor area; another officer in a perimeter patrol vehicle periodically monitored the outdoor area from beyond the fence; and, there were multiple security cameras. Searle related that he and the officer with whom he was partnered would periodically alternate between the indoor and outdoor posts during their shifts, and they would communicate by radio and in person at the door. Searle approximated that on any given day there would be anywhere from 100 to 300 inmates at a time in the indoor and outdoor recreation areas combined. The outdoor recreation area included a workout area, a track, three basketball courts, a handball court, and a softball field, Searle testified. Searle stated that the equipment available for issue to inmates for outdoor recreation included basketballs, medicine balls, soccer balls, volleyballs, ab wheels, and jump ropes, as well as two softball bats, mitts, and softballs. Although there were more softball bats locked away in storage, Searle stated, institutional policy specified that no more than two could be issued. Searle, who related that he inventoried the recreation equipment daily, stated that ToCI policy permitted the use of softball equipment only by Level 3 inmates, such that the equipment was not available to ToCI's higher-security Level 4 inmates whose recreation periods were separate from the Level 3 inmates.

{¶15} The yard was busy at the time of the incident, Searle recalled, and around 2:00 p.m. he was standing outdoors near the door to the indoor recreation area. Searle testified that he was closely monitoring a basketball game that had become "heated," as he was concerned that a fight might break out. As in his affidavit, Searle testified that he then noticed Oglesby lying face down near the workout area, so he walked in that direction, and, upon realizing that Oglesby was in distress, he radioed for assistance. Searle stated that he did not see a bat or know what had happened to Oglesby, other

than some trauma. Contrary to the allegations of the complaint, Searle stated that he never went into the building to summon assistance and instead relied upon his radio and stayed near Oglesby. Searle explained that it seemed any medical attention he might attempt to provide could do more harm than good, so he focused on securing the area to prevent any further harm to Oglesby or anyone else. Searle testified that his partner that day, Corrections Officer Hernandez, had been monitoring the indoor recreation area and responded to the scene, as did other officers, supervisory staff, and medical staff, and Oglesby was placed on a backboard and transported away. Searle stated that he was not familiar with either of the inmates, Daviduk or Shaffer, whom he later learned to be the assailants, and had never spoken to either of them.

{¶16} Upon review, there is no dispute that the evidence presented by the parties demonstrates that prison authorities had adopted basic policies and procedures relative to the security and management of inmate recreation at ToCI. As a matter of policy, Level 3 inmates at ToCI such as Oglesby, Daviduk, and Shaffer were permitted to participate in recreation at specified times, designated by housing unit, and were screened with a metal detector upon entering the recreation area. It was also defendant's policy at ToCI to maintain a set inventory of certain recreational equipment available for issue to inmates, including a maximum of two softball bats available for Level 3 inmates, but the policy prohibited bats from being issued to the higher-security Level 4 inmates who recreated separately. Level 3 inmates using prison-issued recreational equipment or otherwise partaking in recreation were to be supervised by one corrections officer posted outdoors and another corrections officer posted indoors; additionally, there were security cameras in the recreation area and another officer conducted surveillance of the outdoor recreation area periodically from a patrol vehicle beyond the fence. The ratio of inmates to the officers posted in the recreation area was acceptable under institutional policy, according to Major Parker, the official responsible for all security operations at ToCI at that time.

{¶17} Although it is alleged in the complaint that defendant failed to "adequately screen the inmates" who had access to the softball bats, the undisputed evidence demonstrates that Daviduk and Shaffer were properly classified at the same security level as Oglesby and were permitted to have such access under prison rules. And, there is no evidence to suggest that defendant had notice that Daviduk and Shaffer would attack Oglesby, with a softball bat or otherwise. It is further alleged in the complaint that defendant failed to properly supervise inmates' use of softball bats, but again the undisputed evidence demonstrates that the outdoor recreation area was being monitored in accordance with institutional policy. Basic policy decisions such as these are the kind for which defendant is immune from tort liability.

{¶18} Even if the court were to consider plaintiff's untimely-filed memorandum opposing summary judgment, which, as previously stated, defendant moved to strike, plaintiff does not point to any evidence that defendant's employees were negligent in the way that they carried out such policies; indeed, the uncontroverted evidence shows that defendant's employees acted in accordance with institutional policies and procedures in all material respects. Rather, plaintiff expressly states in her memorandum that it is the policies themselves which are being challenged. Although defendant is generally entitled to immunity from tort liability for adopting such policies, plaintiff argues that defendant is not conferred with immunity in this case because, according to plaintiff, the adoption of policies that permitted one corrections officer to monitor 100 or more inmates in the outdoor recreation area, including their use of two softball bats, amounted to "gross negligence." Plaintiff "agrees that if [she] were asserting a claim of simple negligence, the claim against DRC would likely fail", but plaintiff argues that a claim of gross negligence is not subject to the discretionary immunity defense. As authority, plaintiff refers to the immunity provisions set forth in R.C. Chapter 2744, which pertain to political subdivisions. The discretionary immunity defense raised by defendant, however, arises from the language contained in R.C.

2743.02 and pertains to the immunity of the state. Where applicable, discretionary immunity under R.C. 2743.02 precludes "tort liability" in general against the state. *Scott*, 2013-Ohio-4383, 999 N.E.2d 231, at ¶ 24; *Wassenaar*, 2010-Ohio-6125, at ¶ 16. The doctrine thus precludes a claim of negligence or gross negligence that is based upon the performance of an executive act "characterized by * * * a high degree of official judgment or discretion." *Von Hoene v. State, Dept. of Rehab. & Corr.*, 20 Ohio App.3d 363, 364, 486 N.E.2d 868 (1st Dist.1985), quoting *Reynolds*, 14 Ohio St.3d at paragraph one of the syllabus.

{¶19} In sum, reasonable minds can only conclude that ToCI had policies in place permitting the Level 3 inmates involved in this case to participate in outdoor recreation, including softball, under the supervision of one corrections officer posted in the outdoor recreation area, in addition to any surveillance by the perimeter patrol officer and security cameras. Plaintiff challenges the controlling policies as having been adopted in a negligent or grossly negligent manner, but as a matter of law defendant is immune from tort liability for adopting and acting in accordance with these policies concerning prison security and administration. There is no genuine issue of material fact to dispute that defendant's employees complied with the applicable policies at all times relevant. Summary judgment shall be entered in favor of defendant accordingly.

{¶20} Regarding the claims that defendant was negligent in its hiring, training, and supervision of Corrections Officers Searle and Hernandez, to prove these claims "a plaintiff must establish: (1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's actual or constructive knowledge of the incompetence, (4) the employee's act causing the plaintiff's injuries, and (5) the employer's negligence in hiring, retaining, or supervising the employee as the proximate cause of the plaintiff's injuries." *Ball v. Stark*, 10th Dist. Franklin No. 11AP-177, 2013-Ohio-106, ¶ 76. "An underlying requirement in actions for negligent hiring, supervision, and training is that the employee is individually liable for a tort or guilty of a wrong

against a third party, who seeks recovery against the employer." *Ford v. Brooks*, 10th Dist. Franklin No. 11AP-664, 2012-Ohio-943, ¶ 22.

{¶21} While plaintiff alleges in the complaint that "[a]fter learning of the attack, Corrections Officer Searle proceeded into the building, away from the attack," there is no evidence whatsoever to substantiate this allegation. To the contrary, the evidence presented by both parties establishes that Searle did not observe an attack and that when he saw Oglesby lying on the ground he proceeded toward Oglesby and reacted appropriately, promptly summoning a response from both medical and security staff. There is no evidence to demonstrate that Searle saw an attack, much less that he acted wrongfully upon seeing an attack. With respect to Corrections Officer Hernandez, Searle's affidavit and deposition testimony demonstrate that she was monitoring the indoor recreation area at the time when Searle observed Oglesby and that when Searle called over the radio for assistance, she responded accordingly.

{¶22} In short, the evidence submitted by the parties does not substantiate any underlying tort or wrong on the part of Searle or Hernandez. In the absence of evidence of some incompetence by Searle or Hernandez, reasonable minds must conclude that plaintiff cannot prove the elements of a claim for negligent hiring, training, or supervision.

{¶23} While the court is not without sympathy for plaintiff's loss, based upon the foregoing the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment shall be granted and judgment shall be rendered in favor of defendant.

PATRICK M. MCGRATH
Judge

[Cite as *Vickers v. Ohio Dept. of Rehab. & Corr.*, 2018-Ohio-3125.]

| | |
|---|---|
| KATIE VICKERS, etc. | Case No. 2017-00654JD |
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Robert Van Schoyck |
| v. | |
| | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

**{¶24}** A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. As a result, defendant's motion for summary judgment is GRANTED and judgment is hereby rendered in favor of defendant. Defendant's motion to strike plaintiff's memorandum opposing summary judgment is DENIED as moot. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

PATRICK M. MCGRATH
Judge

**Filed July 30, 2018**
**Sent to S.C. Reporter 8/7/18**